FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TREND MICRO INCORPORATED | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:22-cv-1063 (RDA/LRV) |
| v. | ) | |
| | ) | |
| OPEN TEXT, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Open Text, Inc. ("OTI"), Open Text Corp. ("OTC"), Open Text Public Sector Solutions, Inc. ("OTPSS"), and Webroot, Inc. ("Webroot") (collectively "Defendants") Motion to Dismiss for Lack of Venue, Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Dismiss for Failure to State a Claim or Alternatively to Transfer (Dkt. 26)  and Plaintiff's Motion for Jurisdiction Related Discovery (Dkt. 35).  This Court dispensed with oral argument as it would not aid in the decisional process.  *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).  The Motions are now fully briefed and ripe for disposition.  Considering the Motions, together with Defendants' Memorandum in Support of its Motion to Dismiss and the attached Exhibits (Dkt. 27), Trend Micro Incorporated's ("Plaintiff") Opposition to the Motion to Dismiss and the attached Exhibits (Dkt. 34), Defendants' Reply in Support of its Motion to Dismiss and the attached Exhibits (Dkt. 38), Defendants' related Notice (Dkt. 42), Defendants' Opposition to the Motion for Jurisdiction Related Discovery (Dkt. 39), and Plaintiff's Reply in Support of its Motion for Jurisdiction Related Discovery (Dkt. 40) this Court GRANTS Defendants' Motion to Dismiss for Lack of Venue, GRANTS Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, DENIES Defendants' Motion to Dismiss for Failure to State a

Claim, DENIES Defendants' Motion to Transfer, and   DENIES Plaintiff's Motion for Jurisdictional Discovery for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

Plaintiff Trend Micro Inc. filed this suit against Defendants OTI, OTC, OTPSS, and Webroot alleging patent infringement and seeking damages.  Dkt. 1 ¶ 2.  OTC is a Canadian company with dozens of subsidiaries including OTI, OTPSS, and Webroot, Inc.  Defendants OTC, OTI, Webroot, and Plaintiff are also currently litigating related patent claims in the Western District of Texas.  Dkt. Nos. 27 at 3; 34 at 17.

#### 1. Plaintiff's Patents

Plaintiff owns three patents involved in this litigation:  (1) Patent number 8,161,548 ("the '548 Patent") titled "Malware Detection Using Pattern Classification[;]" (2) Patent number 8,505,094 ("the '94 Patent") titled "Detection of Malicious URLs in a Webpage[;]" and Patent number 8,045,808 ("the  '808 Patent") titled "Pure Adversarial Approach for Identifying Text Content in Images."  Dkt. 1 ¶¶ 21, 40, 53.  Plaintiff's infringement claims allege that Defendants package Plaintiff's patented security products with Defendants' own products and thus directly or through intermediaries "make, use, sell, offer to sell within the United States and/or import into the United States and this District the '548 Patent and '094 Patent Accused Products." *Id.*  ¶¶ 61-67.  Plaintiff also asserts that Defendants offer products that implement Plaintiff's patented technologies that provide various aspects of "document and character recognition[,]" and thus either directly or through intermediaries "make, use, sell, offer to sell within the United States and/or import into the United States and this District the '808 Patent Accused Products." *Id.* ¶¶ 68-74.

2. Defendant OTC's Business and Contacts with this Forum

OTC is a corporation that is incorporated in Canada with its principle place of business in Canada.  Dkt. 1 ¶ 6.  OTC does not sell, develop, distribute or otherwise use Open Text Legacy products in the United States.  Dkt. 27-1 ¶¶ 3, 5, 15 ("Loomis Declaration").  Though OTC is a Canadian company, it owns subsidiaries that engage in business and sales in the United States, including within this District.  Dkt. Nos. 27 at 5; 27-1 ¶ 15.  Plaintiff alleges that OTC infringes its patents by placing the infringing products in the "stream of commerce" with the intent that Virginia residents purchase the products, and that OTC's other activities are also directed at Virginia.  Dkt. 34 at 3-4.  OTC operates no retail stores in the District or anywhere else in the United States.  Dkt. 27-1 ¶¶ 5-6.  OTC's software, however, can be purchased at brick-and-mortar stores such as Best Buy.  Dkt. 34 at 14.  OTC's wholly owned subsidiaries, OTI and Webroot, are incorporated and have principle places of business in the United States, Dkt. 27-1 ¶ 14, but neither has an office or physical property in Virginia.  *Id.* ¶¶ 18, 20.  OTC's subsidiary, OTPSS, is incorporated in Virginia with a principle place of business in Arlington, Virginia.  Dkt. Nos. 27-1 ¶ 18, 20, 21.  OTI and Webroot have no affiliation with or interest in OTPSS's Virginia office, and, according to an uncontroverted declaration, none of their employee's work from that office.  Dkt. 27-1 ¶ 25.  However, Plaintiff maintains that certain job postings indicate Arlington, Virginia as a work location for employees at OTC subsidiaries other than OTPSS.  Dkt. 1 ¶ 24.  OTC's subsidiaries maintain their own separate financial records, accounts, offices, and employees.  Dkt. 27-1 ¶ 11.  Furthermore, the board of directors of OTC, OTI, Webroot, and OTPSS are not identical.  *Id.* ¶ 12.  Moreover, OTC and its subsidiaries do not hold joint assets.  *Id.* ¶ 13.

### 3. OTI's Business and Contacts with the Forum

OTI is a corporation incorporated in the state of Delaware with a principle place of business in Menlo Park, California, Dkt. 1 ¶ 5, that sells various Open Text software. Dkt. Nos. 34 at 14; 27-1 ¶ 17. OTI sells products in Texas and "makes all of its products and services available in Texas, including in the Western District of Texas." *Id.* Plaintiff alleges that employees of OTPSS, OTC's subsidiary with an office in Arlington, Virginia, act as agents for OTI to sell Open Text software to Virginia customers. Dkt. 34 at 19. Plaintiff alleges that the website *www.OpenText.com* lists Arlington, VA as an office location and that OTI infringes its patents through its agents at OTPSS. *Id.*

### 4. Webroot's Business and Contacts with the Forum

Webroot is a corporation incorporated in the state of Delaware with its principle place of business in Colorado. Dkt. 1. ¶ 8. Webroot does not have any offices in Texas, but Webroot does have customers in Texas and sells its products in Texas. Dkt. 27-1 ¶ 19. "Webroot makes all of its products available in Texas, including the Western District of Texas." *Id.* ¶ 19. Webroot does not have offices in the Commonwealth of Virginia. *Id.* ¶ 20. Plaintiff alleges Webroot is a division of OTC as shown by their cooperation. Dkt. 1 ¶¶ 25-30. Plaintiff has observed that "Webroot uses OTC's website to collect job applications", *id.* ¶ 25, that Webroot is described as "an Opentext company[,]" *id.* ¶¶ 27, 29, that Webroot has an "Open Text" sign on its Colorado offices, *id.* ¶ 28, and that OTC "has issued press releases touting Webroot's accomplishments[,]" *id.* ¶ 30. Plaintiff alleges that the blending of OTC and Webroot makes it such that Webroot employees are infringing Plaintiff's patents through their agents at OTPSS. Dkt. 34 at 24.

5. Defendant OTPSS's Business and Contacts with the Forum

OTPSS is incorporated in the Commonwealth of Virginia with its headquarters in Arlington, Virginia.  Dkt. 1 ¶ 10.  OTPSS does not make or sell Open Text software and only sells professional services exclusively for the government.  Dkt. 27-1 ¶ 23.  OTPSS handles sensitive government contracts and is strictly separated from the other entities.  *Id.* ¶ 24.  It is required that anyone who has access to OTPSS's data and facilities have a special security clearance.  *Id.* ¶ 24. Plaintiff alleges that OTPSS infringes its patents "by using the infringing Open Text products in providing the professional services offered by OTPSS."  Dkt. 34 at 2 (citing Dkt. 1 ¶¶ 76, 89, 99, 110, 120, 130).

6. The Box Litigation

In 2013, one of OTC's subsidiaries not named in this suit, Open Text S.A., filed suit in this District (the "Box Litigation").  Dkt. 1 at 3; *See Open Text S.A. v. Box, Inc.*, No. 2:13-cv-00319, Dkt. 1 (Complaint) ¶ 8.  During the Box Litigation, Open Text S.A. explained that "'[OTI] has offices and personnel in and near th[e] [Eastern District of Virginia] to serve the public sector market,' including a division based in Rockville, MD dedicated to public sector sales, which is responsible 'for all sales of Open Text-branded software to the public sector, including all federal, state, and local governmental entities.'"  Dkt. Nos. 34 at 20; 34-2 at 5.  Open Text S.A. also represented that "OTPSS . . . services [OTI]'s government customers.  In particular, OTPSS implements and supports the Open Text S.A. products sold to government agencies by OTI. [The sales division of OTI] keeps one account executive and one senior account executive in OTPSS' Arlington, Virginia location because of Arlington's proximity to government agencies and because of the executives' unique clearances that allow them to sell to intelligence agencies."  Dkt. Nos. 34 at 21; 34-2 at 16.  Open Text S.A. further explained that " '[OTI] and [OTC] were required to

form [OTPSS]' because of strict requirements from the Department of Defense."  Dkt. Nos. 34 at 21; 34-2 at 16 n.5.

### B.  Procedural Background

In March 2022, Webroot and OTI initiated a patent infringement lawsuit against Plaintiff concerning similar patents and accused products.  Dkt. 27 at 2.  In May 2022, Plaintiff filed counterclaims against Webroot, OTI, and OTC, who was not yet a party to that litigation,[1] and amended its counterclaims in August 2022.  *Id.*  Then on September 16, 2022, Plaintiff filed its Complaint in this Court against OTI, OTC, Webroot, and OTPSS.  Dkt. 1.  Defendants filed their Motion to Dismiss on November 14, 2022, Dkt. 26, along with their supporting memorandum and exhibits, Dkt. 27.  On December 5, 2022, Plaintiff filed its Opposition with Exhibits, Dkt. 34, and a Motion for Leave to Conduct Jurisdiction Related Discovery, Dkt. 35.  Defendants filed their Reply to the Opposition to the Motion to Dismiss on December 16, 2022 and filed their Response in Opposition to Plaintiff's Request to Conduct Jurisdiction Related Discovery on December 19, 2022, Dkt. 39.  On December 27, 2022, Plaintiff filed a Reply in support of its the Motion for Leave to Conduct Jurisdiction Related Discovery.  Dkt. 40.  On March 15, 2023, Defendant's filed a Notice of Intervening Events.  Dkt. 42.

On September 28, 2023, the Western District of Texas consolidated the related patent suits in its district and issued a scheduling order.  Dkt 27 at 4.  On March 7, 2023 the Western District of Texas Court denied Plaintiff's motion to transfer the case to California.  Dkt. 42 at 1.

---

[1] OTPSS is the only entity that is a party to this action but not the action in the Western District of Texas.  Dkt. 27 at 2 n.1

## II. STANDARDS OF REVIEW

### A. 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When resolving a Rule 12(b)(2) motion, a court undertakes a two-step analysis. First, a court looks to whether personal jurisdiction is authorized by state law. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, a court must find that the exercise of personal jurisdiction comports with the constitutional requirements of due process. *Id.* Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fourteenth Amendment. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

In making a personal jurisdiction determination, a district court "must accept as true the uncontroverted factual allegations in the plaintiff's complaint." *Mattiaccio v. Cantu Apiaries of Fla., LLC*, No. 1:21-cv-00421, 2022 WL 1597826, at *3 (E.D. Va. May 19, 2022) (quoting *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013). When a court does not conduct an evidentiary hearing on personal jurisdiction, a case may be dismissed for lack of personal jurisdiction if the plaintiff has failed to make a *prima facie* showing. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (internal citation omitted).

7

If such a showing is made, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction [so] unreasonable," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) as to "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945).  In evaluating the parties' requisite burdens, a court may rely on "motion papers, supporting legal memoranda, [] the allegations in the complaint," *Consulting Eng'rs*, 561 F.3d at 276, and "the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts," 5B Alan Wright & Arthur Miller, Fed. P. & Proc. § 1351, at 305 (3d ed. 2004); *see also In re Polyester Staple Antitrust Litig.*, No. MDL 3:3-cv-1516, 2008 WL 906331, at *7 (W.D.N.C. Apr. 1, 2008) (explaining that, in determining whether a plaintiff has made a *prima facie* showing, "the court 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts'" (quoting *Reese Bros. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 36-37 (D.D.C. 2007))).

## B. Rule 12(b)(3) Standard

Section 1406(a) of Title 28 of the United States Code provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a court may dismiss a case for improper venue.  "In this circuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper."  *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 679-80 (D. Md. 2010) (citing *Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 471 (D. Md. 2002)).  Like a motion to dismiss for lack of personal jurisdiction, "in deciding a motion to dismiss [for improper venue], all

inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Three M Enters. v. Tex. D.A.R. Enters.*, 368 F. Supp. 2d 450, 454 (D. Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 2005)).

Section 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Food Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017).  It provides that venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  *Jezign Licensing, LLC v. L.T.D. Commodities, LLC*, No. CV RDB-22-1592, 2023 WL 5607908, at *2 (D. Md. Aug. 30, 2023).

For purposes of the first prong of § 1400(b), a defendant resides only in its state of incorporation.  *TC Heartland*, 137 S. Ct. at 1517.  The second prong of § 1400(b) has two parts, requiring that alleged acts of infringement by the defendant occurred in the district and that the defendant has a "regular and established place of business" in the district.

### C.  Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

9

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [its] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing Goldfarb, 791 F.3d at 508).

### D. Motions to Transfer

"Section 1404(a) . . . applies to actions in which venue is proper, but it nonetheless permits a court, in its discretion, to transfer a case 'for the convenience of parties and witnesses,' among other factors, 'to any other district or division where it might have been brought.'" *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, Nos. 2:18-cv-679, 2:29-cv-37, 2:29-cv-44, 2:29-cv-49, 2019 WL

1398172, *2 (E.D. Va. Mar. 28, 2019).  The central question is not whether venue is *proper* in this jurisdiction, but rather whether the Court should transfer the matter because such a transfer would be convenient to the parties and witnesses, and because it would be "in the interest of justice."  28 U.S.C. §§ 1404(a) and (b).

Under Section 1404(a), "'in considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'"  *Bascom Research, LLC v. Facebook, Inc.*, No. 1:12-cv-1111, 2012 WL 12918407, *1 (E.D. Va. Dec. 11, 2012) (quoting *Adilent Tech., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004)).  "The party moving for a transfer of venue bears the burden of showing that the transfer is warranted."  *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (quoting *Beam Laser Sys., Inc. v. Cox Commc'ns. Inc.*, 117 F. Supp. 2d 515, 518 (E.D. Va. 2000)).

## III. ANALYSIS

As a threshold matter, in patent infringement suits, the jurisprudence of the United States Court of Appeals for the Federal Circuit applies to matters unique to patent law.  *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc).  However, when resolving procedural issues that are not unique to patent law, precedents  from the United States Court of Appeals for the Fourth Circuit control.  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

### A. Defendants' 12(b)(3) Motion

Defendants allege that Plaintiff's claims against OTI and Webroot should be dismissed for improper venue because neither is incorporated in the Eastern District of Virginia and neither has

11

a regular or established place of business ("REPB") in the Eastern District of Virginia.  Dkt. 38 at 5.  Plaintiff asserts that OTI and Webroot have a REPB in the Eastern District of Virginia in three ways: (1) employees of OTPSS, which indisputably has a REPB in the District, act as agents of both OTI and Webroot; (2) there are factual disputes regarding whether OTI has a location in Arlington where OTI employees work and whether there are other OTI locations in the District; and (3) the home offices of OTI and Webroot employees in this District constitute REPBs.  Dkt. 34 at 19.  Neither party contends that OTI or Webroot resides in the Eastern District of Virginia, so the Court will focus on whether either entity has a REFB in this District.

To establish that a defendant in a patent case has a REFB, the defendant must meet three general requirements under *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017): "(1) there must be a physical place in the district; (2) it must be a regular and established place of  business; and (3) it must be the place of the defendant."  *In re Google LLC*, 949 F.3d 1338, 1343 (Fed. Cir. 2020) (citing *In re Cray, Inc.*, 871 F.3d at 1360).  Plaintiff puts forth arguments as to each of the *Cray* factors for both entities, so the Court will address OTI and Webroot in turn.

### 1. Defendant OTI

#### a. Agency

The first question is whether employees of OTPSS who definitively work from the Arlington location act as agents for OTI, therefore making the Arlington location OTI's.  Dkt. 34 at 25.  In support of its argument, Plaintiff points to prior Open Text statements from the Box Litigation that indicate a "tight knit" relationship between OTI and OTPSS.  Dkt. 34 at 26.  According to Plaintiff, representations from the Box Litigation explained that "'[OTI] and [OTC] were required to form [OTPSS]' because of strict requirements from the Department of Defense." *Id.*  Plaintiff argues that these statements show OTPSS and OTI employees "work hand-in-hand

to provide the services and products sold by OTI." *Id.* Further, Plaintiff argues that the declaration from the Box Litigation also contains statements that OTI keeps one account executive and one senior account executive in OTPSS' Arlington location. *Id.* at 20. Plaintiff also asserts that the representations indicate that OTI has offices and personnel in the District to serve its public sector market "including a division based in Rockville, MD dedicated to public sector sales." Dkt. 1 ¶ 22. Plaintiff argues that taking the facts in the light most favorable to it, the facts show that OTI has the right to direct and control OTPSS. Dkt. 34 at 26. Defendants contend that because "OTPSS handles sensitive government contracts, OTPSS is strictly separated from other Open Text entities." Dkt. 38 at 1. Further, according to Defendants, pursuant to OTPSS's agreement with the government, OTPSS has "its own human resources function and its own legal counsel," it "bills its own customers and it stores its own contracts," and "[n]o other Open Text entity or individual has access to this information or documents." *Id.* Defendants contend that Plaintiff cannot rely on the Arlington location of OTPSS because it is not OTI's location and no agency relationship exists between OTPSS and OTI to impute the location to OTI. Dkt. Nos. 27 at 7; 38 at 1-2.

The inquiry into whether a defendant has a physical place of business does not depend on whether a defendant has "real property ownership or a leasehold interest in real property." *In re Google LLC*, 949 F.3d at 1343. However, under *Cray*, a "'place of business' generally requires an employee or agent of the defendant to be conducting business at that place." *Id.* at 1344. As the *Cray* court explained:

> [a]n agency relationship is a fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act. The essential elements of agency are (1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf, and (3) the consent by the [agent] to act.

*Id.* at 1345 (internal citations and quotation marks omitted).

In this Court's view, Plaintiff has not clearly established an agency relationship between OTPSS and OTI, such that OTPSS's Arlington location should be imputed to OTI.   Plaintiff argues that OTI directs and controls OTPSS because "OTPSS implements and supports the Open Text S.A. products sold to government agencies by OTI," and therefore consents to OTPSS employees acting on its behalf to implement products that OTI sold "because technical requirements prohibit OTI employees from doing so themselves."   Dkt. 34 at 21.   However, showing complimentary activities of corporate affiliates does not necessarily establish that an agency relationship exists.   For example, in *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, the plaintiff sued four related companies for patent infringement.   6 F.4th 1283, 1289 (Fed. Cir. 2021). The Federal Circuit held that there was no agency relationship between the corporate affiliate that operated Victoria's Secret online stores and the corporate affiliate that operated Victoria's Secret brick-and-mortar stores, even though both stores used the same returns process.   *Id.*   The court in *Andra* explained that performing "a service that may benefit" another corporate affiliate is not sufficient to show that the beneficiary "controls the process."   *Id.*   The court further found that since the plaintiff did not meet its burden of showing that the Victoria's Secret parent company had the right to direct or control the affiliate's employees, the affiliate was also not an agent of the parent.   *Id.*   Similarly, here, Plaintiff does not offer any evidence that OTI directs or controls OTPSS.   Plaintiff's assertion that OTPSS helps to implement OTI's products solely to government agencies shows a complimentary business function like that in *Andra*, which is insufficient to show an agency relationship.   *Andra Grp,* 6 F.4th at 1288-89; *cf. Arigna Tech. Ltd. v. Volkswagen AG*, No. 221CV00054JRGRSP, 2022 WL 2704943, at *8 (E.D. Tex. Jan. 20, 2022) (finding evidence that Mercedes and the dealerships carry out the exact same business function of selling cars to the public weighs in favor of finding REPB where the dealerships are located).   In fact, Plaintiff

14

acknowledges that OTPSS was created to have an entity that was insulated from other OTI affiliates as required to receive government contracts.  Dkt. 34 at 2.  Thus, the Court finds that Plaintiff has not shown that OTI sufficiently controls OTPSS so as to establish an REPB in this District.

### b. Locations in this District

Plaintiff next argues that the Arlington, Virginia location also qualifies as an REPB because OTI employees work there.  Plaintiff asserts that "there is at least a [genuine] fact dispute" regarding whether OTI employees either work in the District at OTPSS's Arlington office or in a training facility in Dulles, Virginia.  *Id.* at 21-23.  In support of its position, Plaintiff alleges that statements from the Box Litigation contradict Defendants' statements in the Loomis Declaration that only OTPSS employees are able to work in the Arlington office.  According to Plaintiff, statements from the Box Litigation show that two OTI employees worked in the Arlington office in 2013.  *Id.* at 22.  Plaintiff also alleges that job postings for OTI list Arlington, Virginia as a work location, Dkt. 1 ¶ 24, suggesting that non-OTPSS employees can and do work from Arlington. Dkt. 34 at 22.  Finally, Plaintiff asserts that although Mr. Loomis says in his Declaration that OTI has no property in Virginia, the *opentext.com* website lists a training facility in Dulles.  *Id.* at 23. Plaintiff argues that since Defendants' declaration does not address the Dulles training facility, its presence directly contradicts the Declaration.  *Id.* at 22-23.  Defendants respond, arguing that there is no contradiction because it can be true that two OTI employees worked in the Arlington location in 2013 but not presently.  Dkt. 38 at 5-6.  Further Plaintiff argues it did not address the Dulles facility because it is no longer in use.  *Id.* at 4.  Finally, Defendants assert that the job postings were in error and thus should not be used to establish venue.  Dkt. Nos. 27 at 9; 27 -1 ¶ 25.  Even

if the postings were used to establish venue, however, Defendants argue that the postings in and of themselves do not show any OTI employees working in Arlington.  Dkt. 27 at 9.

Taking the evidence in the light most favorable to the Plaintiff, this Court finds that neither the Arlington location nor the Dulles location can be imputed to OTI.  A location can be considered an REPB when an employee or agent of the defendant is conducting the defendant's business there.  *In re Google*, 949 F.3d at 1344-45.  Plaintiff has offered evidence that, in 2013, OTI employees worked in the Arlington location, but it has offered no evidence that OTI employees currently work in Arlington.  Dkt. 34 at 6-7.  Thus, the statements from the Box Litigation do not necessarily contradict Defendants' declaration that no OTI employees *currently* work in Arlington.  Taking Plaintiff's allegation that OTI employees worked in Arlington during the Box Litigation in 2013 as true, it does not follow that they are still present there almost 10 years later when Defendants' sworn declaration says otherwise.

A similar problem exists with Plaintiff's allegations regarding the Dulles training facility.  Plaintiff alleges that OTI used a training facility in Dulles, Virginia in 2018.  Defendants assert in the Loomis Declaration that OTI closed its Dulles facility by July 1, 2020 and terminated the lease on February 2021.  Dkt. 38 at 4.  These allegations do not create a genuine dispute, as it could be true that, at one-point, OTI had a facility in Dulles but it no longer does.  Therefore, Plaintiff's allegations, even taken in the light most favorable to Plaintiff, do not establish that either the Arlington office or the Dulles facility is OTI's REPB.

Plaintiff's argument regarding the job postings also fails.  While it is strange that OTI lists one of its employment locations as Arlington if no OTI employees are allowed to work from that office, as stated in the Loomis Declaration, Plaintiff has not provided evidence that anyone was hired by OTI to work in Arlington.  Therefore, even though the location listed on the job

application gives the Court pause, it does not follow that anyone is *actually* working in Arlington. *See Celgene Corp. v. Mylan Pharms. Inc.,* 17 F.4th 1111, 1123 (Fed. Cir. 2021) (holding a job posting asking that candidates live in New Jersey or be within driving distance was not sufficient to establish REPB in New Jersey). Therefore, OTI's job postings are insufficient to establish that OTI has a REPB in this District.

### c. Home Offices

Finally, Plaintiff argues that some OTI employees have home offices in this District and those home offices constitute OTI's established REPB. Dkt. 34 at 23-24. Defendants maintain that Plaintiff does not put forth any evidence showing that any OTI employees reside in the District or that, even if they did, their home offices constitute OTI's REPB.

To establish venue under § 1400(b), a "place must be 'of the defendant, *not solely* . . . of the defendant's employee*.*" *Celgene Corp.*, 17 F.4th at 1122 (emphasis added). To determine if a home office is an REPB, the Federal Circuit has articulated several factors to consider including: (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; (2) "whether the defendant conditioned employment on" "an employee's continued residence in the district" or "the storing of materials at a place in the district so that they can be distributed or sold from that place"; (3) "a defendant's representations" about that place, including advertisements; and (4) "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." *Id.*

Plaintiff argues that because OTI has key customers located within this District, OTI desires to have employees within the District, even though the Declaration states that OTI has no employees in Arlington. Dkt. 34 at 23. However, showing that OTI desires to have employees in

an area, does not necessarily mean that OTI conditions employment on an employee's continued residence in the District. Plaintiff is correct that Defendants' declarant never explicitly stated that OTI does not have employees in the District. Dkt. 34 at 23. However, the law is clear that an employee's home cannot, on its own, establish venue. *Celgene Corp.*, 17 F.4th at 1123-24. Plaintiff does not "point to advertising or marketing identifying the personal homes as places of business" or any of the other factors that could lead this Court to believe even if an employee did reside in the District, that their home office constituted OTI's REPB. *Id.* at 1123. In *Cray*, the plaintiff identified that a defendant company allowed two employees to work from the district in which it filed suit. 871 F.3d at 1364. However, because there was no indication that the defendant company owned or leased the homes, played a part in selecting the location of the homes, stored inventory in the homes, conducted demonstrations in the homes, or conditioned employment or support on maintaining the home, the *Cray* Court found that the employees' homes were not places of the defendant. *Id.* at 1365. Similarly, Plaintiff has not alleged that OTI owned or leased the home offices, stored inventory there, selected the homes, conducted demonstrations or conditioned employment on employee's residence in the home. Thus, even if the home offices exist, they cannot be considered OTI's REPB. Simply because a supposed location within a judicial district is important to the business performed by a company does not mean that the location is an REPB. *Celgene Corp*, 17 F.4th at 1124.

### 2. Defendant Webroot

Next, Plaintiff asserts that Webroot has a REPB in this District because OTPSS's Arlington location is also imputed to Webroot, given that it is a division of OTC. Dkt. 1 ¶¶ 25-30. In support of its argument, Plaintiff alleges that Webroot solicits job applications through OTC's website, *id.* ¶ 25, and that Webroot is described as an "Open Text company," *id.* ¶¶ 27, 29. Plaintiff also

alleges that Webroot has an "Open Text" sign at its Colorado offices and that OTC issues press releases regarding Webroot's accomplishments.  *Id.* ¶ 30.  Finally, Plaintiff alleges that OTPSS is an agent of Webroot because Webroot employees (1) are "presen[t] in or near Virginia," (2) "work with OTPSS personnel," and that (3) "work[ing] with" means "directing and controlling."  Dkt. 34 at 24-25.  Defendants argue that Plaintiff has no evidence that Webroot employees work in Virginia and relies only on the fact that Defendant's declaration did not foreclose the possibility that Webroot employees work in a Virginia office.  Dkt. 38 at 3.  Second, Defendants argue that Plaintiff has not provided any allegations that Webroot employees who reside in the District work for OTPSS.  *Id.* at 4.  Third, Defendants argue that even if the other allegations were true, there are still no facts evidencing that Webroot employees directed and controlled OTPSS.  *Id.*

The Court agrees with Defendants that Plaintiff has not met its burden of proving that OTPSS is Webroot's agent.  *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208 (Fed. Cir. 2022).  While Plaintiff's allegation that Webroot employees are working in Virginia out of an office that is not Webroot's may tend to show an agency relationship, Plaintiff does not point to any evidence suggesting that Webroot employees are working out of the OTPSS office beyond mere speculation.  Similarly, Plaintiff's argument that Webroot employees residing in Virginia may be working with OTPSS employees fails.  Plaintiff solely relies on inferences from what the Loomis Declaration did *not* say.

As with OTI, Plaintiff has not established that Webroot directs or control OTPSS.  It has already been established that OTPSS is purposefully isolated from other Open Text corporate affiliates.  Plaintiff makes similar claims regarding the Arlington location as it did for OTI, and for the same reasons, this Court finds that Plaintiff's argument fails.

In sum, this Court concludes that venue is improper for both OTI and Webroot, and Plaintiff's claims against these entities will be dismissed in this regard.

### B. Defendants' 12(b)(2) Motion

The Court first considers whether Plaintiff has made a *prima facie* showing of personal jurisdiction over OTC.   There are two categories of personal jurisdiction: general and specific.   A court may exercise general jurisdiction over a non-resident defendant for non-forum related activities when that defendant's "continuous corporate operations" in the state are "so substantial" and so "'continuous and systemic' as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   Therefore, just as general jurisdiction for individuals is generally limited to those states where the individual is domiciled, general jurisdiction over corporations is limited to "an equivalent place," such as the corporation's place of incorporation or principle place of business. *Id.* at 136 (quoting *Goodyear*, 564 U.S. at 919).

Meanwhile, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant where the litigation arises out of or relates to the nonresident defendant's contacts with the forum. *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 865 (E.D. Va. 2000).   To satisfy due process in the exercise of specific jurisdiction, a court must find "that the defendant purposefully directed his activities at residents of the forum thereby availing himself of the privilege of conducting activities therein and invoking the benefits and protections of the forum's laws." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472).   "As a corollary to this 'purposeful availment' requirement, courts" also "consider whether the . . . nonresident defendant could reasonably have" foreseen "being haled into court in the forum state." *Id.* (citing *Burger*

*King Corp.*, 471 U.S. at 474).  Here, Plaintiff asserts only specific personal jurisdiction so the Court will not address general jurisdiction.  Dkt. 1 ¶¶ 12-18.

### 1.  Specific Personal Jurisdiction for OTC

The Court finds that the exercise of specific personal jurisdiction over OTC does not comport with Due Process, because OTC did not purposefully avail itself of the privilege of conducting business in Virginia.  Because Virginia's long-arm statute extends its authorization of personal jurisdiction to the limits of due process, this Court focuses solely on the constitutional inquiry.  *See* English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (interpreting Virginia's long-arm statute as being coextensive with the Due Process Clause).

Plaintiff argues that this Court has specific personal jurisdiction over Defendant OTC because Plaintiff's claims arise from alleged patent infringement committed by OTC in Virginia.  Specifically, Plaintiff argues that OTC has minimum contacts with Virginia because it: (1) placed products in the stream of commerce with the expectation that the products will be purchased in Virginia and (2) took other actions purposefully directed at Virginia.  Dkt. 34 at 14-15.  To support its stream of commerce theory, Plaintiff points to the fact that OTC's website is accessible to residents in the state of Virginia, Dkt. 1 ¶ 17, and that a representation from the Box Litigation described OTC's activity in the United States as "distribut[ing] software products . . . through a number of subsidiaries."  Dkt. 34 at 13-14.  In response, Defendants contend that OTI does not have sufficient minimum contacts with Virginia because OTC is "merely a Canadian parent company that does not operate in the United States; only its subsidiaries engage in activities directed at any forum in the United States."  Dkt. 27 at 15 (citing Dkt. 27-1 ¶¶ 3-5, 15).

In the Fourth Circuit, courts apply a three-pronged test to evaluate whether specific personal jurisdiction is proper: (1) "did the defendants 'purposefully avail' themselves of the

21

privileges of conducting activities in the forum"; (2) "does the claim arise out of these activities"; and (3) "is the exercise of jurisdiction reasonable?" *Aitken v. Comms. Workers of Am.*, 496 F. Supp. 2d 653, 659 (E.D. Va. 2007) (citing *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)); *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 611 (E.D. Va. 2002).

i. Purposeful Availment of the Laws of Virginia

To exercise jurisdiction consistent with the requirements of due process, a defendant must have established minimum contacts with the forum state itself. *Burger King*, 471 U.S. at 275. "The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection to the forum State." *Ralsky*, 203 F.Supp.2d at 612. Physical presence in the forum state is not required and the key inquiry is whether the defendant "directed his activities at Virginia 'in more than a random, fortuitous, or attenuated way." *Rosario v. Wands*, No. 1:09-CV-663 AJT/TCB, 2009 WL 2986614, at *4 (E.D. Va. Sept. 17, 2009) (quoting *Allen v. James*, 381 F.Supp.2d 495, 497 (E.D.Va. 2005). The Fourth Circuit has specified several nonexclusive factors for courts to consider in determining whether a defendant purposefully availed itself of the forum state including:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, [and]
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up).  In conducting this analysis, the Court must focus on "the quality and nature" of the defendant's contacts with the forum state.  *Carefirst of Md., Inc.*, 334 F.3d at 397.

In the instant case, the Court finds that the predicate jurisdictional allegations, when construed in the light most favorable to the Plaintiff, are not sufficient to show that OTC purposefully directed its activities toward Virginia.  Although the Complaint alleges that OTC "purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by residents of this judicial District[,]" Dkt. 1 ¶ 13, Plaintiff does not sufficiently allege additional facts to support this conclusory statement.  Where a plaintiff has failed to allege any facts supporting conclusory statements regarding personal jurisdiction, "the Court need not accept those allegations as true."  *Andrews v. Shandong Linglong Tyre Co.*, No. 3:21CV794 (DJN), 2022 WL 2484544, at *6 (E.D. Va. July 6, 2022).

In its Opposition, Plaintiff relies on a statement from Open Text S.A. in the Box Litigation that OTC distributed products and provided customer support through a number of subsidiaries that sell OpenText software.  Dkt. 34 at 14.  The Court finds that the statements from the Box Litigation do not present a factual dispute.  Both the 2013 statement and the Loomis Declaration can be true at the same time.  Accepting Plaintiff's allegations as true that OTC distributed products in this District in 2013 still does not mean that OTC distributes products this during this litigation, particularly where a contemporaneous declaration says it does not.  Dkt. 27-1 ¶ 5.

Plaintiff argues that OTC has otherwise directed relevant actions toward Virginia.  Plaintiff argues that OTC directs activities at Virginia because it solicits customers in this District, Dkt. 1 ¶ 16, advertises in this District, and maintains a website directed at residents in this District, *id.* ¶ 17.

While Plaintiff suggests that Defendant OTC may direct residents in the District to its subsidiary, Plaintiff does not make this allegation in its Complaint or provide additional evidence to support this allegation beyond speculation.  Further, the Loomis Declaration clearly states that OTC does not solicit or advertise in the United States and has no contracts with any person or company in the United States.  Dkt. 38 at 10-11.  Showing that Virginia residents can access OTC's website, does not suggest that OTC directly targeted Virginia.  The Federal Circuit and courts within the Fourth Circuit have repeatedly held that a resident's access to a defendant's website does not in and of itself establish minimum contacts, because it is not directed at those customers specifically but instead available to all customers in the United States.  *See e.g, Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("The difficulty is that [the] website is not directed at customers in the [forum], but instead is available to all customers throughout the country who have access to the Internet.  Thus, the ability of [the forum's] residents to access the defendants' websites does not by itself show any persistent course of conduct by the defendants in the [forum]." (citation omitted)); *Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 704 (E.D. Va. 2012) (concluding that the mere ability of individuals within the Eastern District of Virginia to access a defendant's website is in insufficient to establish a defendant has targeted any conduct at Virginia residents).  Plaintiff does not allege any concrete evidence that OTC's website is specifically targeted at Virginia residents.

Plaintiff also points to statements and marketing materials from both OTC and OTPSS' websites.  Plaintiff emphasizes that OTPSS' website states that the team works "in tandem with [its] parent on every project" and that OTC highlights on Twitter when its executives visit Washington, D.C.  Dkt. 34 at 14-15.  First, regarding OTPSS's website, the Loomis Declaration makes clear that Open Text Holdings (OTHI) is OTPSS' parent company not OTC, so statements

24

regarding OTPSS' interactions with its parent company are irrelevant to OTI.   That OTC executives visit Washington, D.C. does not establish that those executives or OTC directed their activities at Virginia.   Accordingly, the Court finds Plaintiff does not adequately plead a stream of commerce theory or that OTC otherwise directed activities at Virginia.

Even if Plaintiff had shown a *prima facie* case of personal jurisdiction, OTC has met its burden of showing that asserting personal jurisdiction is otherwise unreasonable.   Defendant first argues that exercising personal jurisdiction would be unduly burdensome, because OTC is a foreign corporation with no contacts in Virginia and that Virginia has no unique interest in the dispute.   Dkt. 27 at 20.   Further, OTC argues that the parties have been litigating similar claims involving the same products in the Western District of Texas.   Defendant OTC asserts that since Texas is Plaintiff's home state, Plaintiff's interest in obtaining convenient and effective relief would be best served by litigating the claim in the Western District of Texas.   *Id.* at 19.   Defendant argues that litigating in Texas advances the Court's interest in efficient resolution because the case in Texas already has an established schedule and allowing a similar case to proceed in Virginia could lead to inconsistent rulings.   *Id.* at 20.   Plaintiff contends that Virginia does have an interest in the dispute because OTC's subsidiary, OTPSS, is located in Virginia and OTI, another subsidiary, is located close by in Potomac, MD and Trend Micro has an office in Virginia.   Dkt. 34 at 16.

"In determining whether exercising jurisdiction [is reasonable and fair as to] comport[] with 'fair play and substantial justice,' [the Court] consider[s] five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering

fundamental substantive policies." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009) (citations omitted). Regarding the burden on Defendant OTC, though OTC is headquartered in Waterloo, Canada, the Court finds that there would be a minimal burden for Defendant OTC to travel from Ontario to Alexandria, Virginia. Dkt. 34 at 16. *Touchcom*, 574 F.3d at 1417 (holding that the relatively short travel time from Toronto, Ontario and routine flights from Ontario to DC weighed in favor of finding the burden was minimal). Regarding the forum's interest in adjudicating the dispute, the Court agrees with Defendant that Virginia has little interest in adjudicating the dispute against OTC in Virginia. Neither OTC nor Trend Micro are headquartered in Virginia, and Plaintiff does not point to any specific injury to Virginia. Plaintiff's focus on OTC's subsidiaries having locations in Virginia is unavailing because the instant Motion is regarding jurisdiction over OTC not jurisdiction over its subsidiaries. Plaintiff does argue that it has an office in Virginia, but that alone does not show that Virginia has a strong interest in the dispute between two out-of-district companies. Regarding Plaintiff's interest in efficient relief, the Court does not see how it would be more convenient and effective to litigate the same or similar patents in both Texas and Virginia. In a similar vein, the judiciary's interest in efficient resolution weighs against a finding of personal jurisdiction because there is a high potential for conflicting decisions and duplicative discovery if the cases proceed involving the same parties[2] and similar products. Thus, the factors weigh against finding personal jurisdiction.

Despite Plaintiff's contention otherwise, Federal Rule of Civil Procedure 4(k)(2) is inapplicable here. Plaintiff argues that OTC is subject to personal jurisdiction in this District under Rule 4(k)(2) because OTC is not subject to jurisdiction anywhere else. Dkt. 34 at 5-6. Defendant OTC, on the other hand, argues that Plaintiff could have brought these claims in the Western

---

[2] OTPSS is the only entity that is a party to this litigation but not to the Texas litigation.

District of Texas as part of its ongoing litigation.  Dkt. 27 at 21.  In response, Plaintiff argues that OTC challenged jurisdiction in the Western District of Texas.  Dkt. 34 at 18.  Plaintiff does not seem to disagree that the case against OTC could have been brought in Texas, as indicated by its counterclaims filed against OTC in the Western District of Texas.  *See Open Text S.A. v. Box, Inc.*, No. 2:13-cv-00319, Dkt. Nos. 18; 49 (Plaintiff's Counterclaims against OTC, OTI, and Webroot).  Still, to support its 4(k)(2) claim, Plaintiff relies on the same stream of commerce arguments, which the Court has already rejected.  Consequently, Plaintiff's 4(k)(2) argument also fails.

ii. Cause of Action's Relationship to Defendants' Activities in Virginia

As this Court has found that Defendant OTC does not have sufficient minimum contacts with Virginia, the Court declines to consider whether OTC's minimum contacts with the forum arise out of contacts that "[D]efendant [it]self create[d] with the forum."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475).

C.  Plaintiff's Motion for Jurisdictional Discovery

Plaintiff argues that if this Court finds that venue and personal jurisdiction are improper as to Defendants OTC, OTI, and Webroot,  it has alleged "specific" and substantive" facts regarding OTC's contacts with the Eastern District of Virginia that warrant limited discovery.  Dkt. 35 at 2.  Plaintiff bases its motion mainly on previous representations from the 2013 Box Litigation that state OTI and Webroot maintain a presence in the District. And that OTC conducts business in this District.  *Id.*  Ultimately, Plaintiff seeks to conduct targeted discovery to confirm that the 2013 representations remain accurate.  *Id.* at 3.  Defendants argue that "this is a textbook example of a case in which venue and jurisdictional discovery" is improper as Plaintiff has identified nothing that might reasonably call into question Mr. Loomis' declaration that explicitly states that neither

OTI nor Webroot have any physical presence in Virginia and that OTC does not conduct business in Virginia at this time.  Dkt. 38 at 3.

District courts "'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them],'" including whether to grant jurisdictional discovery.  *Carefirst of Md., Inc.*, 334 F.3d 390 at 402 (quoting *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (4th Cir. 1993).  However, courts often deny requests for jurisdictional discovery where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," or when the additional information that the plaintiff seeks would not alter the analysis of personal jurisdiction. *Id.* at 402-03.  Jurisdictional discovery can be appropriate when a plaintiff files a motion containing 'specific and substantive' allegations regarding a court's jurisdiction[,]" *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018), or  when "significant gaps in the record exist" as to a defendant's contacts with a forum state, *Groove Digital, Inc. v. United Bankshares*, *Inc.*, No. 3:17-cv-794, 2018 WL 3543055, at *5-6 (E.D. Va. Jul. 23, 2018) (citation and internal quotation marks omitted).

This Court denies Plaintiff's Motion, because, as discussed *supra*, it finds that Plaintiff has not sufficiently alleged OTI or Webroot's purported contacts with Virginia.  Far from providing a specific and substantive basis for jurisdictional discovery, Plaintiff's evidence only invites speculation.  While Plaintiff is adamant that the 2013 representations of OTC, OTI,  and Webroot's contacts with the forum state remain true, it has provided no reason or evidence for this Court to question Mr. Loomis's specific statements to the contrary in his sworn declaration. *See McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had

significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *see also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988) (holding that "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.,* 301 F.Supp.2d 545, 554 (E.D.Va.2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only "bare allegations" to dispute defendant's affidavits denying jurisdictional acts or contacts."). Further, the fact that OTC once maintained an office in this District does not mean that it presently does, particularly in light of Mr. Loomis' sworn declaration to the contrary. Having found that Plaintiff has not provided any concrete evidence or indication of fraud or intentional misconduct on the part of Defendants OTI, OTC, or Webroot, jurisdictional discovery is not warranted.

Plaintiff also attempts to rely on a gap in the record arguing that OTC likely distributes software in this jurisdiction because its subsidiaries "serve[s] large customers" in the District. Dkt. 35 at 3. Plaintiff's conclusory statements that OTC's subsidiaries serve customers in Virginia, does not offset or negate Mr. Loomis' declaration that OTC itself has no contacts with Virginia. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's denial of jurisdictional discovery where plaintiff's request was based on "conclusory assertions"). Further, while Plaintiff takes issue with Defendants' use of the phrase "directly" when describing its lack of business engagements with the United States, Dkt. 40 at 4, the next sentence in the declaration clarifies that "OTC does not make, use, sell, offer for sale, or distribute any products or services in the United States." Dkt. 27-1 ¶ 5. Plaintiff does not present

any evidence beyond representations from the 2013 litigation of another subsidiary that have since been refuted by Mr. Loomis' Declaration, to show OTC "indirectly" conducts business in the United States. Thus Plaintiff's "suspicions constitute only speculation and conclusory assertions," which "do not rise to the level . . . that would justify jurisdictional discovery." *Gillison v. Lead Express, Inc.,* No. 3:16CV41, 2018 WL 6537151, at *7 (E.D. Va. Dec. 12, 2018).

Plaintiff's cited cases do little to support its position. In *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1236 (Fed. Cir. 2010), the court allowed jurisdictional discovery where there was record evidence suggesting a parent company, arguing it was merely a holding company, controlled the acts of its subsidiary that had sufficient contacts with the forum. Additionally, the plaintiff in *Nuance Commc'ns, Inc.* alleged that the company "advertised the accused product on its website, shared an overlapping management team with its domestic subsidiary, and enjoyed revenues from the sales of the allegedly infringing products" and that a magazine article suggested that the parent controlled the actions of its subsidiaries. 626 F.3d, at 1235-1236. The record here does not contain such evidence. Plaintiff also does not suggest that the jurisdiction issue turns on the extent of OTC's online sales or any other "information that is uniquely in control of the defendant" as was the case for the plaintiff in *Coastal Video Commc'ns, Corp. v. Staywell Corp.* 59 F. Supp. 2d 562, 572 (E.D. Va. 1999), where the court found jurisdictional discovery was appropriate to determine the extent of the sales in the forum. As none of these circumstances are present here, Plaintiff's cited cases are inapposite.

Ultimately, the conclusory allegations and lack of factual support compel this Court to conclude that Plaintiff's request for discovery is not warranted. Thus, this Court will deny Plaintiff's motion.

D. Defendants' 12(b)(6) Motion

Defendant OTPSS argues that Plaintiff's Complaint fails to state a claim against OTPSS. Specifically, OTPSS claims that because it does not make or sell software and Plaintiff inappropriately lumped all the Defendants together, Plaintiff has not properly stated a claim. Dkt. 27 at 24-25. Plaintiff argues that it has properly stated a claim because it alleges that each Defendant, including OTPSS, infringed Plaintiff patents by "making, using, offering to sell, and/or selling" in the Eastern District of Virginia. Dkt. 1 ¶ 76.

OTPSS's central argument is structured from a factual basis: that the specific entity, OTPSS, has not committed infringing activity because it is not a software provider but rather a services provider. OTPSS argues that because it sells only professional services, it cannot infringe "by making or selling the products Trend Micro identifies." Dkt. 27 at 24. Further OTPSS argues that the "lumping of OTPSS with all defendants is also problematic because it fails to provide OTPSS fair notice of the particular allegations against it." *Id.* at 25. In its Opposition, Plaintiff points out OTPSS's reliance on the Loomis Declaration is improper under Rule 12(b)(6) analysis, but that even if OTPSS does not "make or sell the accused products, OTPSS can and still is liable for infringement based on using those products." Dkt. 34 at 10.

The Court does find that Plaintiff has adequately stated a claim against OTPSS. First, Plaintiff alleged that all Defendants, including OTPSS, infringed its patents by making, selling, using or offering to sell the accused products within the United States. While Defendant does not dispute that Plaintiff has pleaded sufficient detail of how the accused products infringe Plaintiff's patents, it argues that the Complaint is deficient as to OTPSS because the Complaint uses the term "Defendants" generally and thus did not put OTPSS on notice of how it could have infringed Plaintiff's patents when it does not make or sell software. *Id.*

The Court first notes that grouping individual defendants collectively is permissible in certain circumstances. *Maglula, Ltd. v. Amazon*, No. 1:19-CV-1570, 2020 WL 9536937, at *50-51 (E.D. Va. Apr. 9, 2020); *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 494 (E.D. Va. 2005); *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 678 (E.D. Va. 2011).  OTPSS's reliance on *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 501 (E.D. Va. 2013) is misplaced.  In *Takeda*, the plaintiff did not clearly identity the defendants individually or clearly differentiate the particular role of each defendant in the liability-rising conduct.  *Takeda*, 963 F. Supp. 2d at 503 n.4.  However, here because Plaintiff has alleged that all Defendants, including OTPSS, used, sold, offered to sell, and/or imported the accused products, and alleged that OTPSS provides professional services derived from Open Text products, it is reasonable to infer that OTPSS faces a potential infringement charge based on the use of the products rather than on the manufacture or sale.  Dkt. 1 ¶¶ 27, 35.  Therefore, the Court denies Defendants' Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6).

### E. Defendants' Motion to Transfer

In the alternative, Defendants argue that any remaining claims be transferred to the Western District of Texas because this case has no connection to the Eastern District of Virginia, the "parties are already litigating similar patents and technology, involving the same accused products, in the Western District of Texas[,]" and the interests of justice and convenience of the parties favor transfer.  Dkt. 27 at 25-26.  The only remaining claims are those against OTPSS, so the Court will only analyze transfer with regard to those claims.

Under Section 1404(a), a case should be transferred where (1) "the claims might have been brought in the transferee forum" and (2) "the interest of justice and convenience of the parties and witness justify transfer to that forum."  *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630

(E.D. Va. 2003).  Here, Defendants argue that this case could have been brought against OTPSS in the Western District of Texas, but Plaintiff disputes that contention.  Dkt. 34 at 25.

Plaintiff is correct that claims against OTPSS could not have been brought in the Western District of Texas.  This circumstance is in and of itself fatal to Defendants' Motion to Transfer. Defendants argue that OTPSS could consent to venue in the Western District of Texas under 1404(a) and therefore the case could have been brought in the Western District of Texas.  28 U.S.C. § 1404(a).  Cases within the Fourth Circuit and the Federal Circuit have held that in patent cases, a defendant cannot make transfer proper by "asserting that it would consent to venue in the proposed transferee forum."  *In re SK hynix*, 847 F. App'x at 852; *see also Nitride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-183-ADA, 2022 WL 358164, at *3 (W.D. Tex. Feb. 7, 2022) ("Inter-district transfers require either the consent of all parties or a proper venue wherein the civil action might have been brought."); *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001) (holding Defendant "cannot avoid the jurisdiction statutory requirement for transfer of venue by consenting to jurisdiction in California where jurisdiction is otherwise improper")

Defendants have not shown that venue would have been proper as to OTPSS in the Western District of Texas.  As discussed *supra*, venue in a patent infringement case is proper only where the defendant resides or where the defendant has committed acts of infringement and has an REPB. 28 U.S.C. § 1400(b).  Here, Defendants have not shown that OTPSS resided in the Western District of Texas as it is incorporated and headquartered in Virginia.  Dkt. 34 at 25.  Defendants also have not shown that OTPSS has an REPB in the Western District of Texas.  As OTPSS fails to meet either the "resides" prong or the "REPB" prong, venue is improper as to OTPSS in the Western District of Texas.  Because venue as to OTPSS is not proper, the cause of action against OTPSS

could not have been brought in the Western District of Texas within the meaning of the transfer statute.  28 U.S.C.A. § 1404(a).

Defendants further argue that because OTPSS *could have* consented to venue in the Western District of Texas when the initial litigation began, venue is proper under the second prong of 1404(a) that allows for transfer where *all* parties consent.  However, Plaintiff does not consent to transfer as evidenced by its Opposition.  Defendants rely on *JRK Prop. Holdings, Inc.* v. *Colony Ins. Co.*, No. 1:21-CV-71, 2021 WL 7707760, at *1, (E.D. Va. May 19, 2021) to argue that even where a plaintiff opposes transfer, the defendant's consent alone is enough to satisfy the threshold analysis.  Dkt. 38 at 15.  Defendants citation to *JRK Prop. Holdings,* Inc. is unpersuasive.  *Id.*  In *JRK Holding Inc.*, the court found that a case could have been brought in the transferee court over Plaintiff's objection where all defendants consented to the forum.  *Id.*  at *1.  However, the instant case is readily distinguishable.  First, *JRK Prop. Holdings* is a breach of contract case, not a patent case.  *Id.*  Therefore, the standard for establishing venue is different.  *Id.*  Second, in *JRK Prop. Holdings*, neither party disputed that the transferee forum had jurisdiction over the defendants and therefore the Court's inquiry was solely to address whether transfer served "the interests of justice" and the "convenience of the parties."  *Id.*  Third, the court in *JRK Prop. Holdings* also noted that actions giving rise to venue occurred in the transferee District.  *Id.* (noting that the insurance policies at issue in a breach of contract claim were accepted by the Plaintiff in the transferee forum).  None of these circumstances are present here.  Thus, this Court finds that *JRK Prop. Holdings* is not instructive.  *Id.*  Since all parties do not consent to transfer to the Western District of Texas, and venue over OTPSS in the Western District of Texas is otherwise improper, transfer is not available under either prong of U.S.C. § 1404(a).  Accordingly, the suit against OTPSS could

not have been brought in the Western District of Texas and Defendants' Motion to Transfer venue to the Western District of Texas is denied as to Defendant OTPSS.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss for Lack of Venue as to OTI and Webroot is GRANTED; and it is

FURTHER ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to OTC is GRANTED; and it is

FURTHER ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim is DENIED; and it is

FURTHER ORDERED that Defendants' Motion to Transfer is DENIED; and it is

FURTHER ORDERED that Defendants OTC, OTI, and Webroot are dismissed from this action; and it is

FURTHER ORDERED that Plaintiff's Motion for Jurisdictional Discovery is DENIED.

The Clerk is directed to forward copies of this Order to Counsel of Record.

IT IS SO ORDERED.

Alexandria, Virginia
September 29, 2023

/s/

Rossie D. Alston, Jr.
United States District Judge

35